The PRUDENTIAL INSURANCE COMPANY OF AMERICA, et al., Plaintiffs,

v.

BMC INDUSTRIES, INC., Defendants.

No. 85 Civ. 4881 (RWS).

United States District Court, S.D. New York.

March 31, 1986.

White & Case, New York City (Thomas McGanney, of counsel), for plaintiffs.

Cahill, Gordon & Reindel, P.C., New York City (Charles A. Gilman, Laurence A. Silverman, Judy Poller and William A. Jacobson, of counsel), for defendants.

SWEET, District Judge.

Plaintiffs, the Prudential Insurance Company of America, Teachers Insurance and Annuity Association of America, Manufacturers Hanover Trust Company and State Street Bank and Trust Company (collectively the "Plaintiffs"), entered into an agreement (the "Note Agreement") for the purchase and sale of convertible subordinated

notes (the "Notes") with the defendant, BMC Industries, Inc. ("BMC") on December 13, 1984. The Note Agreement provided for the sale of $30,000,000 of BMC's notes to the Plaintiffs and obligated BMC to make interest payments on the unpaid balance at the rate of 12½% per year, payable on February 1, May 1, August 1, and November 1 of each year. In this action, the Plaintiffs allege that BMC failed to disclose material information and misrepresented material facts during the negotiations prior to the signing of the Note Agreement and seek rescission of that agreement.

The Plaintiffs have now brought consecutive motions seeking permission to deposit interest payments to the court pursuant to Rule 67, Fed.R.Civ.P., or in the alternative, to strike BMC's defense alleging ratification of the Note Agreement. As more fully described below, the Plaintiffs' motions will be denied.

**Prior Proceedings**

The complaint alleges that on December 14, 1984, one day after the parties executed the agreement, the Plaintiffs learned of alleged misstatements and omissions which occurred during the previous four months. The parties were unable to negotiate a resolution. On January 22, 1985, the Plaintiffs assert that they made a demand for rescission, and on June 25, 1985, the Plaintiffs commenced this action. The complaint seeks, among other relief, rescission of the Note Agreement and restoration to each plaintiff of the amount paid to BMC for the purchase of the Notes plus interest.

During February, 1985 and May, 1985, BMC wired interest payments required under the Note Agreement to the Plaintiffs. All of these payments were returned except for certain payments received by Manufacturers Hanover. There is a dispute about whether the retention of those payments was intentional or merely a clerical error. On August 1, 1985, BMC sent the third interest payment, which was not returned. On August 27, 1985, the Plaintiffs submitted its Rule 67 motion for an order permitting the Plaintiffs to retain the third

interest payment or pay it into court without prejudice to its claims in this action. The motion was deferred until December 20, 1985 due to a pending motion to transfer the litigation which was eventually denied. BMC sent a fourth interest payment to the Plaintiffs on November 6, 1985 which was also retained. There is a dispute as to whether the parties had consented to the acceptance of this interest payment without prejudice to the Plaintiffs' claims in this action. The Plaintiffs assert that BMC agreed that this fourth payment was made subject to the pending Rule 67 motion. However, BMC stated by letter of November 6, 1985 that "acceptance of these interest payments constitutes ratification of the Note Agreement."

The Plaintiffs thereupon filed another motion on January 2, 1986, pursuant to Rule 12(f), Fed.R.Civ.P., to strike BMC's Sixteenth Defense which asserts: "Plaintiffs are not entitled to equitable relief because they have ratified the Note Agreement by their conduct since its execution, including acceptance of interest payments made by BMC to them thereunder."

**Discussion**

**A. Rule 67**

The Plaintiffs have brought a motion pursuant to Rule 67, Fed.R.Civ.P., seeking to have the court approve the deposit into the court of all interest payments received by the Plaintiffs. This motion, which was submitted one month before the motion to strike BMC's defense of ratification, seeks to use the procedural device of Rule 67 to resolve the issue of whether the Plaintiffs' acceptance of the interest payments constituted ratification of the Note Agreement.

Essentially, the Plaintiffs wish to have the payments held safely at a distance by the court, thereby avoiding the issue of ratification by acceptance on the one hand and the possibility of later unavailability should the funds be returned to BMC. Initially the Plaintiffs requested that BMC be compelled to make interest payments to the court, but this aspect of the motion was

appropriately withdrawn since no authority for such an order is provided by Rule 67. Thus, the motion merely contemplates that funds now in the possession of the Plaintiffs be voluntarily deposited pending the outcome of this action.

■ The Plaintiffs' motion to invoke Rule 67 will be denied since this procedural device was only intended to provide a place of safekeeping for disputed funds pending resolution of a legal dispute and not to provide a means of altering the contractual relationships and legal duties of each party. As several courts have held, Rule 67 may not be used to effect a legal transfer of property between the litigants. In *Dinkins v. General Aniline & Film Corp.*, 214 F.Supp. 281 (S.D.N.Y.1963), the court denied a motion by the defendant to permit the deposit of moneys due under a contract to the court rather than to the plaintiff while at the same time asserting his compliance with the contract. *See also General Pencil Co. v. George N. Kahn Co.*, 246 F.Supp. 60, 61–62 (S.D.N.Y.1965). Similarly, in *Baxter v. United Forest Products Co.*, 406 F.2d 1120, 1126 (8th Cir.1969), the plaintiff affirmed a contract and sued for damages, but at the same time sought to utilize Rule 67 to avoid having to fulfill its obligation to make payments to the defendant pursuant to the contract. The court held that it would be inappropriate to construe Rule 67 as a means of altering the legal rights and duties of each party. Moreover, the court held that Rule 67 was "not intended as an 'equitable' alternative to the applicability of state law under Rule 67" to seize property for the purpose of securing a later judgment. *Id.* at 1126. In accordance with these principles, therefore, the Plaintiffs will not be permitted to deposit interest payments with the court simply to avoid confronting the issue of ratification raised by BMC's Sixteenth Defense.

Rule 67 is also inappropriate because the sum of money is not itself in dispute. Each side concedes that the Plaintiffs are entitled to payments in excess of the funds already in their possession no matter what the outcome of this litigation. The dispute is not over the disposition of these funds but rather over the underlying contract and thus the final duty of BMC to continue payments as interest on a valid contract or to restore the consideration paid for a voidable contract with credit for payments already made. Since there is no real dispute concerning the funds themselves, Rule 67 is not properly invoked. *See Manufacturers Hanover Overseas Capital Corp. v. Southwire Co.*, 589 F.Supp. 214, 221 (S.D. N.Y.1984).

## B. Ratification

■ In an action for rescission based on fraud, this court has stated that "waiver will be found where, subsequent to the discovery of the fraud, the party later claiming a right to rescind has continued to accept the benefits of the agreement or acted in some other fashion inconsistent with exercise of a right to rescind." *MacTaggart v. Risucci*, 85 Civ. 0812, slip op. at 3 (S.D.N.Y. October 28, 1985). A waiver requires "the intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it." *City of New York v. State of New York*, 40 N.Y.2d 659, 669, 357 N.E.2d 988, 389 N.Y. S.2d 332, 340 (1976). "Ratification" results when a party to a voidable contract accepts benefits flowing from the contract, or remains silent, or acquiesces in contract for any considerable length of time after he has opportunity to annul or void the contract. *Smith v. Jones*, 76 Misc.2d 656, 351 N.Y.S.2d 802, 807 (N.Y.City Civ.Ct.1973). By her own acts or words, a party may ratify what would otherwise be a questionable contract. *Surlak v. Surlak*, 95 A.D.2d 37, 466 N.Y.S.2d 461, 469 (N.Y.A. D.2d Dept.1983).

Relying on *Brennan v. National Equitable Investment Co.*, 247 N.Y. 486, 160 N.E. 924 (1928), BMC argues that if a party accepted benefits of a contract after bringing an action for rescission, that party ratified the agreement. In *Brennan*, the plaintiff brought an action at law to rescind a contract for the purchase of stock. The

facts as stated by the court indicated that in August, 1923, the plaintiff attempted to rescind the contract by tendering the return of the stock. In November of that year, he verified his complaint in the action at law seeking a money judgment in the exact amount of his payment for the stock. From October, 1923 through October, 1925, the plaintiff received and kept several dividends. The plaintiff failed to mention those payments nor did he offer to credit them to the defendant until his reply to the supplemental answer three years later in November, 1926. Only then did the plaintiff attempt to explain that his acceptance of the dividends was merely a return on his capital and thus consistent with an action for rescission. Under these circumstances, however, the court held that the plaintiff's conduct manifested an intent to ratify the contract and thereby abandon his right to rescission. 247 N.Y. at 490, 160 N.E. at 925. Accordingly, the court held that the plaintiff's conduct constituted a reaffirmance of the contract.

While the *Brennan* opinion held that the acceptance of the benefits of a contract during the pendency of a suit for rescission may constitute ratification, that holding has been superceded by developments in New York law on rescission and restitution. The *Brennan* decision rested on a distinction between two types of legal actions to obtain relief for a transaction induced by fraud or misrepresentation. As the court noted:

One claiming fraud may rescind his purchase and sue to get his money back, or he may keep his purchase and sue to recover damages for fraud. He cannot do both. In an action in equity for a rescission of a purchase of bonds, the coupons may be cashed for the benefit of the party against whom the action is brought, for then the act is not inconsistent with the plaintiff's position. In such an action he has not pretended to rescind. He brings the action for that express purpose.

247 N.Y. at 490, 160 N.E. 924 (citations omitted). This discussion in *Brennan* suggests that the plaintiff's actions during the pendency of the litigation were deemed relevant to the issue of ratification because of the ambiguity inherent in an action at law based on fraud. Such an action could be favorably resolved either by the payment of damages or the return of the money originally paid in the transaction. By contrast, the *Brennan* opinion indicates that an action in equity constituted an explicit, unambiguous petition to the court to grant rescission.

These distinctions, so carefully drawn by the New York Court of Appeals in 1928, no longer have the same significance today. *See* 3 Weinstein, Korn & Miller, *New York Civil Practice* ¶ 3004.01 (1978). With the enactment of § 112-g of the Civil Practice Act in 1946, now codified at § 3004 of the New York Civil Practice Law and Rules, the principal distinction between actions at law for rescission and those in equity was abolished. Section 3004, N.Y.C.P.L.R., now provides that:

A party who has received benefits by reason of a transaction that is void or voidable because of fraud, misrepresentation ... and who, in an action ... seeks rescission, restitution, a declaration or judgment that such transaction is void, or other relief, whether formerly denominated legal or equitable, dependent upon a determination that such transaction was void or voidable, shall not be denied relief because of a failure to tender before judgment restoration of such benefits....

Although § 3004 is explicitly directed towards the tender of benefits, as opposed to acceptance, *see* note 2, *infra*, it nevertheless indicates that the receipt of benefits during the pendency of an action should not defeat a right of action for rescission. Therefore, the *Brennan* court's concern over the plaintiff's acceptance of benefits during the pendency of an action at law for rescission is not dispositive in this action.[1]

**1.** To the extent the *Brennan* decision is premised on the inconsistency between the Plaintiffs' action for rescission and claim for damages in an action at law, the historical difficulty has

The alterations to a right of action for rescission which were rendered by the statutory dissolution of distinctions between law and equity indicate that the Plaintiffs' claim cannot be defeated by virtue of their acceptance of payments made pursuant to the contract and their failure "to tender before judgment restoration of such benefits." By filing this suit demanding rescission, the Plaintiffs have made an unambiguous request to have the contract voided and therefore it is not possible to construe the acceptance of payments as an inference of Plaintiffs' intent to ratify the contract. The ambiguity inherent in such a suit filed in 1928 simply does not exist today.

A holding that the Plaintiffs' acceptance of payments *after* the commencement of a suit for rescission cannot be deemed a ratification, merely states explicitly what other recent decisions have implicitly assumed. In adjudicating the issues of ratification, the key factors are whether a party silently acquiesced in the contract or rather promptly interposed his objections upon discovering the basis for the claim of rescission. *See Sheindlin v. Sheindlin,* 88 A.D.2d 930, 450 N.Y.S.2d 881 (N.Y.App. Div.1982); *Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.,* 184 F.Supp. 116 (S.D.N.Y.1959), *aff'd,* 274 F.2d 805 (2d Cir.1960). In examining evidence relevant to this determination, courts have focused solely on actions and statements prior to suit, apparently on the understandable assumption that the formal pleading of a claim of rescission all but eliminates any subsequent implication of ratification. *See Citibank, N.A. v. Real Coffee Trading Co.,* 566 F.Supp. 1158, 1163 (S.D.N.Y.1983) ("Other documents suggest that prior to the institution of this action they had put Citibank on notice of their dissatisfaction with the agreement."); *Grubel v. Union Mutual Life Insurance Co.,* 54 A.D.2d 686, 387 N.Y.S.2d 442, 443 (N.Y. App.Div.1976) ("The plaintiff ratified the

... agreement by accepting benefits under its express terms for more than two years before commencing this action.").

It is especially appropriate under the circumstances of this case, where the Plaintiffs have merely accepted monetary payments, to hold that such conduct after commencement of suit cannot constitute ratification. In this setting, the acceptance of money in an amount less than the plaintiff's eventual recovery with or without the granting of rescission causes no conflict with the cause of action because it lies within an exception to the general rule that "restitution will not be enforced unless the plaintiff returns what he has received as a part performance by the defendant." 5 *Corbin on Contracts* § 1114 (1964). In the present case, the Plaintiffs' retention of money payments after the commencement of suit is not inconsistent with a claim for rescission since they will be entitled to at least as much relief at the close of trial.

> [A] party who attempts to rescind a transaction on the ground of fraud, mistake or otherwise is not bound to restore that which he has received by virtue thereof, when, in any event, he is entitled to retain it as indisputably his own whatever may be the fate of his effort to rescind the transaction.

12 *Williston on Contracts* § 1530 (Jaeger ed. 1970). *See* Restatement (Second) of Contracts § 384(1)(A)(1981) ("If all that is to be returned is money, a credit against a larger sum allowed in restitution will suffice"). New York courts have adopted this common sense exception. *See ETC Corp. v. Title Guarantee and Trust Co.,* 271 N.Y. 124, 128, 2 N.E.2d 284 (1936) ("Where what a party has received consists only of money, the amount of which he will be entitled to in any event, he need not make an offer of restitution.") *See also Josephberg v. Cavallero,* 262 A.D. 1, 27 N.Y.S.2d 361 (N.Y.App.Div.1941); *In re Estate of Sunshine,* 82 Misc.2d 363, 369 N.Y.S.2d

also been removed since both the New York C.P.L.R. § 3002 and more importantly the Federal Rules of Civil Procedure Rule 8(e)(2) permit inconsistent, alternative pleadings. Of

course, in this action the Plaintiffs have sought rescission alone so there is no conceivable ambiguity or inconsistency.

304, 311 (1975), *rev'd on other grounds,* 51 App.Div. 326, 381 N.Y.S.2d 260, (N.Y.App. Div.), *aff'd,* 40 N.Y.2d 875, 389 N.Y.S.2d 344, 357 N.E.2d 999 (1976).

Since the acceptance of money during the pendency of this action is not inconsistent with the Plaintiff's claim for rescission, it does not undermine the clear demand for rescission embodied by the act of filing the present action. Therefore, the acceptance of payments and acquiescence in BMC's proffer does not create an inference of ratification which would otherwise be raised in the absence of a pending action. Similarly, the Plaintiffs' demand for attorney's fees does not create any inference of ratification, since the parties had agreed to the payment of those fees whether or not the Note Agreement was consummated. It is, of course, possible that a party could adopt a course of conduct during trial that was so inconsistent with a claim for rescission as to constitute ratification of a contract, but no such affirmative act of ratification has been presented here.

Having concluded that the defense of ratification is not applicable to the Plaintiffs' actions following the commencement of this suit, it is necessary to caution that this holding does not extend to conduct prior to the filing of a complaint. In the absence of a formal pleading requesting rescission, all the circumstances attending a party's course of conduct are relevant to determining whether an intent to ratify has been established. *See Walter v. Laidlaw,* 249 N.Y. 46, 51, 162 N.E. 580 (1928); *Vivien v. Board of Education Retirement System,* 63 N.Y.S.2d 390, 395 (N.Y.Sup.Ct. 1946), *aff'd mem.,* 272 A.D. 1000, 73 N.Y. S.2d 836 (N.Y.App.Div.1947). Therefore, the fact of acceptance of the first two interest payments by Manufacturers Hanover and the circumstances underlying that

acceptance could possibly be probative of an intent to ratify.[2] In addition, BMC is entitled to pursue discovery regarding the acts and intent of the other plaintiffs which might establish a defense of ratification. Whatever the merit of this defense, the assertions included in BMC's Sixteenth Defense raise factual issues regarding whether the acts and statements of the Plaintiffs could be construed as an acceptance of the Note Agreement. The motion to strike the defense should be denied since there has been no significant discovery as to the conduct of the Plaintiffs' after learning of the alleged misrepresentations on December 14, 1984 and before the commencement of litigation on June 25, 1985. *See Salcer, Panfeld, Edelman v. Envicon Equities Corp.,* 744 F.2d 935, 939 (2d Cir.1984); *Durham Industries, Inc. v. North River Insurance Co.,* 482 F.Supp. 910, 914 (S.D. N.Y.1979).

IT IS SO ORDERED.

---

**2.** The distinction between the acceptance and the tender of these payments reveals why the moneys received by Manufacturers Hanover before the commencement of suit are relevant to the issue of ratification. As discussed above, it is not necessary that a party make any tender of benefits asserting a claim for rescission. However, the common law requirement of tender merely addressed one prerequisite which needed to be fulfilled at the commencement of an action. The defense of ratification focuses on a party's acquiescence in or acceptance of the contract after discovering the basis of his claim for rescission, not on the party's willingness to restore benefits once the action is brought. Thus, the statutory modification rendered by N.Y.C.P.L.R. § 3004 does not eliminate the defense of ratification by acceptance.